UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KELSEY A. EMRICK,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1]<br><br>　　　　　　　Defendant. | CASE NO. 12-cv-05766 RBL<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: September 20, 2013 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

## BACKGROUND

Plaintiff, KELSEY A. EMRICK, was born in 1990 and was 18 years old on the alleged date of disability onset of November 15, 2008 (*see* Tr. 132, 140). Plaintiff was diagnosed with ADHD as a young child and treated for many years with Ritalin (Tr. 384). She had an extensive history of problems with depression, general anxiety with racing thoughts, catastrophic thinking, excessive worrying, insomnia, and irritability. She was diagnosed with PTSD. She had been raped twice as a child and suffered the sudden death of her father in 2008 (Tr. 282-85, 302-05, 385, 390, 416). That same year, she began abusing alcohol, gained 70 pounds and developed Type 2 diabetes (Tr. 44-45, 285, 385). She developed a series of rituals and obsessions, including compulsions and perfectionist traits (Tr. 58, 385, 390). She has received psychotherapy since 2009 and takes Adderal and Trazodone (Tr. 210-11, 261-93, 365-456). Plaintiff started tenth grade in high school, but did not complete it because she was having problems understanding and completing the work (Tr. 38-39).

Plaintiff has no significant work experience (Tr. 165).

Plaintiff has at least the severe impairments of post-traumatic stress disorder (PTSD), depression, anxiety, attention deficit hyperactivity disorder (ADHD), and obsessive-compulsive disorder (OCD) traits (20 CFR 404.1520(c) and 416.920(c)) (Tr. 18).

At the time of the hearing, plaintiff was living at home with her mother (Tr. 37).

## PROCEDURAL HISTORY

Plaintiff filed an application for child insurance ("CIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 132-39, 140-43). The applications were denied initially and following reconsideration (Tr. 81-92). Plaintiff's requested hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on October 14, 2011 (*see* Tr. 31-75). On November 22, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.16-26).

On June 26, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision August, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on November 9, 2012 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether or not the ALJ improperly rejected medical opinion evidence and acted as her own medical expert; (2) whether or not the ALJ improperly rejected plaintiff's testimony; (3) whether or not the ALJ improperly rejected lay testimony; (4) whether or not the ALJ made a residual functional capacity ("RFC") finding that does not reflect plaintiff's limitations; and (5) whether or not the ALJ failed to meet her burden at step five of the sequential evaluation process (*see* ECF No. 12, p. 1).

By way of introduction, plaintiff synthesized all five of these issues by taking issue with the ALJ's conclusion that plaintiff had the RFC to perform unskilled work with simple tasks 95% of the work day, eight hours a day, five days a week. Plaintiff argues, "[w]hile there is evidence Ms. Emrick could perform simple and perhaps even complex tasks, there is no evidence that she could remain on task 95% of the time even with medication." (ECF No. 12, p. 5.)

Therefore, this case turns on whether or not this RFC determination is supported by substantial evidence and whether or not the ALJ satisfied her burden at step 5 of the sequential analysis to support the conclusion that other work existed in the national economy that plaintiff could perform based on this RFC. After reviewing the record as a whole, this Court concludes that the ALJ failed to meet that burden and that the RFC must be assessed anew. Therefore, the Court recommends that this matter be reversed and remanded for further consideration.

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

Although plaintiff identified five issues at the beginning of her opening brief (ECF No. 12, p. 1), she did not separately delineate any of these issues for argument.  Instead, plaintiff argues in summary that "there is no evidence that [plaintiff] could remain on task

95% of the time even with medication" (*id.* at p. 5).  Therefore, instead of discussing each issue separately, the Court will consider overall if there is substantial evidence in the record to support the ALJ's conclusion regarding plaintiff's ability to perform simple tasks 95% of the time during an 8 hour day, five days a week.

Plaintiff correctly notes that an ALJ may not render her own medical opinion.  *See Tackett v. Apfel*, 180 F3d 1094, 1102-03 (9th Cir. 1999).  An ALJ's findings must be based on all of the probative evidence and the case record (SSR 96-8p) and assess the combined effect of the claimant's impairments, both severe and nonsevere.  *See* 20 CFR §§ 404.1545, 916.945.

In this case, plaintiff argues that the ALJ rejected certain medical evidence that contradicts the ALJ's conclusion that plaintiff could stay on task 95% of the time (ECF No. 12, pp. 7-13).  Defendant does not cite, and the Court has not found, any evidence from an accepted medical source or other expert who concludes that plaintiff can stay on task 95% of the work day, eight hours a day, five days a week.  However, this appears to be the ALJ's conclusion, based on other information in the record. This particular finding is critical because the ALJ posed a hypothetical question to a vocational expert who concluded that if plaintiff was off task just 10% of the time (90% on task), this would preclude all competitive work (*see* Tr. 68).  Therefore, the ALJ's entire RFC is based on a finding with only a 5% margin of error.

To support this finding, the ALJ cited several medical sources (*see* Tr. 21-24). Catherine Howe, M.D. performed a comprehensive psychiatric evaluation on behalf of DSHS on August 15, 2010 (*see* Tr. 233-37). Dr. Howe diagnosed plaintiff with, among

other things, obsessive-compulsive disorder and dysthymic disorder (*see* Tr. 236). According to the ALJ, Dr. Howe concluded that plaintiff had "normal concentration, correctly following a three-step command" (Tr. 21). While the ALJ correctly noted this result from Dr. Howe's mental status exam, Dr. Howe also indicated that plaintiff's recent memory was "slightly impaired" (*see* Tr. 235). As noted by the ALJ, although another examiner observed that plaintiff was able to recall three of three objects both immediately and after five minutes, Dr. Howe observed that plaintiff only was able to recall two of three objects after a five minute delay (*see* Tr. 21, 235; *but see* Tr. 363). Dr. Howe also qualified her discussion and prognosis.  She stated that plaintiff endorsed difficulty with concentration; that other psychiatric difficulties "are at least partially treatable;" and that "with appropriate treatment her condition can improve in the next twelve months" (*see* Tr. 236).

    Perhaps more importantly, Dr. Howe also explicitly assessed plaintiff's functional abilities, opining that "I believe she has the ability to perform simple and repetitive tasks, however, she may have some difficulty with detailed and complex tasks, given the fact that she does seem quite distractible on the mental status exam and also that she appears to have slight memory impairment" (Tr. 236).  Although the ALJ gave Dr. Howe's opinion "significant weight" Dr. Howe never opined that plaintiff could perform even simple tasks for 95% of a work day.  In fact, she noted several problems with plaintiff's ability to concentrate.   For instance, she noted that "it is difficult to give the clear diagnosis of attention deficit disorder at this time given the presence of comorbid anxiety and depression that *could very well cause her difficulty with concentration*" (Tr. 236,

emphasis added).  Therefore, Dr. Howe's opinion, by itself, does not provide substantial evidence to support the ALJ's conclusions.

The ALJ also gave significant weight to the state agency's reviewing medical consultant, Dan Donahue, Ph.D., who opined that plaintiff "was able to perform simple, repetitive tasks, and some complex tasks" (Tr. 23, *citing* Tr. 254).  Dr. Donahue reviewed plaintiff's medical records and concluded that plaintiff was moderately limited in several areas regarding sustained concentration and persistence including (1) moderately limited in the ability to carry out detailed instructions; (2) moderately limited in the ability to maintain attention and concentration for extended periods; (3) moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; and (4) moderately limited in the ability to sustain an ordinary routine without special supervision (Tr. 252).  Dr. Donahue also noted that plaintiff had a diagnosis of, among other things, "ADHD primary inattentive type, PTSD chronic" (Tr. 254).  Despite these notations, Dr. Donahue concluded that plaintiff "is capable of concentration, pace and persistence for normal work week" (Tr. 254).  Dr. Donahue's review of the records is included in a Washington State "Mental Residual Functional Capacity Assessment" comprised of three pages.  Dr. Donahue did not attempt to explain why the moderate limitations in sustained concentration and persistence would not affect plaintiff's ability to maintain concentration, pace and persistence for a normal work week, or if she could maintain concentration, pace and persistence 90% of the time or 95% percent of the time.  Dr. Donahue used a state disability evaluation form, which may or may not be consistent with the Social Security evaluation herein of 95% on task

efficiency. Dr. Donahue was not asked, and he did not offer, an opinion that evaluated the percentage of on task efficiency. If anything, Dr. Donahue's evaluation identifies potential problems, without providing anything more than a broad assessment.

A state agency reviewing medical consultant, Bruce Eather, Ph.D. also issued a one-page concurrence with Dr. Donahue's assessment, which the ALJ also accorded significant weight (Tr. 23, *citing* Tr. 350). The sum total of Dr. Eather's contribution is as follows:

> I have reviewed all the evidence in file and the assessment of 08/23/2010 is affirmed as written.

These sparse conclusions by two reviewing consultants provide some support for the ALJ's decision. It is questionable, however, whether or not this is "substantial evidence." As noted "substantial evidence" is more than a scintilla, less than a preponderance," and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Since the Court's obligation is to "review the administrative record as a whole weighing both the evidence that supports and that which detracts from the ALJ's conclusion, "*Sangathe v. Chatter*, 108 F.3d 978, 980 (9th Cir. 1996) (*per curriam*) (*quoting Andrews, supra*, 53 F.3d at 1039), this Court must consider these reviewing consultants' opinions in the context of the other medical testimony.

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra,* 81 F.3d at 830 (*citing Winans v. Boeing*, 853 F.3d 643, 647 (9th Cir. 1987). A nonexamining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or a psychologist. *Lester, supra,* 81 F.3d at 831 (*citations omitted*). "However, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, *supra,* 242 F.3d at 1149 (*citing Magallanes, supra,* 881 F.2d at 752).

Here, the reviewing consultant has no treatment relationship with plaintiff and, presumably, has never met her. The observations of a variety of examining and treating physicians are inconsistent with Dr. Donahue's and Dr. Eather's assessments. This includes some of the physicians to whose opinions the ALJ gave significant weight.

For instance, the ALJ gave significant weight to the opinion of examining psychologist Rachel Langhofer, Ph.D., who performed an evaluation on behalf of DSHS (*see* Tr. 23). Dr. Langhofer diagnosed plaintiff with "Bipolar Disorder1, most recent episode depressed, severe, chronic, with psychotic symptoms, with rapid cycling, ADHD, primary inattentive type, and PTSD, chronic" (Tr. 222). In noting that plaintiff had marked symptoms in her "ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting," Dr. Langhofer observed that plaintiff appeared labile and lethargic, and noted that plaintiff "appears to have some difficulty attending to tasks and following through on commitments" (Tr. 223). Dr. Langhofer also opined marked functional limitations in a number of areas including her "ability to

maintain appropriate behavior in a work setting," again noting that plaintiff "appears to have some difficulty attending to tasks and following through on commitments" (*see id.*). Dr. Langhofer also explicitly indicated that her opinions regarding functional limitations were based in part on her own observations during the clinical interview and the mental status examination ("MSE") (*see id.*). Despite these limitations, Dr. Langhofer concluded that "with services [plaintiff] is likely to improve and to be able to work," although she did not opine as to how long services would need to be provided before plaintiff experienced such improvement (Tr. 225).

The Court notes several things regarding Dr. Langhofer's conclusions. First, her conclusions that plaintiff had marked functional limitations in her ability to attend to tasks and follow through on commitments is inconsistent with the ALJ's conclusion that plaintiff could maintain concentration and attention 95% of the time. Even if the ALJ accepted Dr. Langhofer's conclusion that plaintiff is likely to improve and be able to work, there is no evaluation by Dr. Langhofer regarding what type of work she would be capable of performing or that she would be able to stay on task 95% of any work day. Therefore, the ALJ's conclusion that she could do so is not directly supported by Dr. Langhofer's evaluation. In fact, it is contraindicated.

Next, the ALJ's relies on treating clinician, Kathleen Pritchard, M.A., and she accords "significant weight" to her opinion (Tr. 23). In reviewing Ms. Pritchard's assessment, she noted that plaintiff had "difficulty concentrating" (Tr. 420). This does not support the ALJ's conclusion. Again, Ms. Pritchard certainly did not conclude that

plaintiff was capable of maintaining attention to a task 95% of the day for a full work week.

The ALJ gave less weight to the opinion of examining psychologist, Art Peskind, Ph.D. (*see* Tr. 23). Dr. Peskind concluded that plaintiff had "poor motivation, low energy, difficulty concentrating" (Tr. 358). He opined that these symptoms resulted in functional limitation during work activities that was "severe" (*id.*). He also noted marked effect from anxiety and attention deficit on work activities (*id.*). Dr. Peskind indicated that he personally observed plaintiff's symptoms of depression and anxiety, but not attention deficit (*see id.*).

When it came to specific functional limitations, Dr. Peskind found severe limitation in the ability to learn new tasks, the ability to relate appropriately to co-workers and supervisors, the ability to interact appropriately with public contacts and the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. He noted that plaintiff's attention deficit disorder interferes with these abilities, and that all of plaintiff's diagnosed impairments interfere with all of these abilities other than the ability to learn new tasks (Tr. 360). The ALJ rejected this opinion because "it is not supported by the examination findings, particularly the test results indicating good memory and concentration" (*citing* Tr. 63). Although Dr. Peskind found that for the length of time it took to complete the mental status examination, plaintiff could maintain memory and concentration, this conclusion, by itself, is not necessarily an inconsistent examination finding and does not mean that plaintiff could maintain attention 95% of an eight hour work day, five days a week. With his findings of severe

limitations in relation to the ability to tolerate the pressures of normal work day, Dr. Peskind obviously did not believe she could.

Overall, although the medical records are certainly subject to differing conclusions, none of the examining or treating medical sources concludes that plaintiff can remain on task 95% of the time, even with medication. Therefore, the ALJ's conclusion and her RFC are not based on substantial evidence in the record.

The Court also notes that the Ninth Circuit has specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639 (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). It is unclear if the ALJ considered spending hours researching stamps and classes, as well as babysitting, as contradicting other testimony or as transferable work skills (*see* Tr. 22). They do not appear to translate into 95% on-task concentration and work ability.

The Court also finds relevant the ALJ's "independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14

inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 20, 2013, as noted in the caption.

Dated this 30th day of August, 2013.

J. Richard Creatura
United States Magistrate Judge